COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Kelsey and Senior Judge Coleman


JOHNNIE KEITH FOSTER, JR.

                                                              MEMORANDUM OPINION[*]
v.        Record No. 1336-04-3                                    PER CURIAM
                                                               DECEMBER 14, 2004
ROANOKE CITY DEPARTMENT
  OF SOCIAL SERVICES


               FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                           Clifford R. Weckstein, Judge

            (Melvin L. Hill; Ware, Cargill & Hill, P.C., on brief), for appellant.
            Appellant submitting on brief.

            (William M. Hackworth, City Attorney; Heather P. Ferguson,
            Assistant City Attorney, on brief), for appellee.  Appellee
            submitting on brief.

            (Joseph F. Vannoy, Guardian *ad litem* for the minor children, on
            brief).  Guardian *ad litem* submitting on brief.


       Johnnie Keith Foster, Jr. appeals the decision of the trial court terminating his residual

parental rights to his three sons pursuant to Code § 16.1-283(C)(2).  Foster contends the evidence

was insufficient to support the trial court's decision to terminate his residual parental rights.  Upon

review of the record and briefs of the parties, we affirm the trial court's decision.

                                        BACKGROUND

       We view the evidence in the light most favorable to the prevailing party below and grant to

it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence

established that the Roanoke Department of Social Services (DSS) investigated a complaint of child

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

neglect in 1999 which resulted in a felony conviction against Foster. The children were removed from the home and later returned. In March 2002, DSS received another complaint of child neglect. Katie Hale, a child protective services worker, investigated the complaint and discovered a home filled with trash, cat feces, and dirty clothes. The children's room smelled of urine, no sheets were on the beds, and the boys had no clean clothes available. Family Preservation Services was sent into the home to assist with parenting skills, crisis management, counseling, and addressing behavioral problems. They provided 125 hours of services to the family. In May 2002, Hale investigated another complaint when Foster fell asleep and the boys climbed onto the roof and were locked out of the house. Foster was again convicted of felony child neglect.

DSS developed a foster care services plan, approved by the juvenile and domestic relations district court, which required Foster to attend parenting education classes, undergo a psychological evaluation, participate in individual and marital counseling, maintain full time employment for an extended period of time, maintain regular visitation with the children, improve the physical conditions of the home, and cooperate with DSS and its recommendations. Foster underwent two psychological evaluations; he was diagnosed as suffering from alcoholism and depression, having a personality disorder with significant anti-social traits, and being of above-average intelligence: "not a good combination to have." Foster attended individual counseling but was twice discharged for missing appointments and discontinuing his psychological medication after two months. Foster held nine jobs in eighteen months. The home remained dirty and the utilities were cut off several times, including the gas for over a year. Foster and his wife attended three sessions of marital counseling but then stopped going to the sessions.

Dr. Lanahan, the psychologist who evaluated Foster, testified that he did not advise returning the children to Foster. Lanahan stated that,

> there is no treatment that exists that is going to be able to rectify this
> situation with Mr. Foster and that it would be . . . the best thing to do

for his children would be to have them cared for by somebody who could actually provide for their needs, and that is not going to be Mr. Foster.

Lanahan also stated that if the trial court desired to try to return the children to Foster that

> this [would] be an undaunted process and it was going to take a substantial amount of time. I am talking years for even a glimpse of hope to be embraced, and it would require a great deal of effort on behalf of Mr. Foster. It would require that he be in treatment. He is going to have to address his alcoholism. He is going to have to be able to address severe characterological flaws with his personality disorder, and that is just to stand a glimpse of a possibility that he is going to be able to recover.

## ANALYSIS

Code § 16.1-283(C) provides in pertinent part the following:

> [t]he residual parental rights of a parent or parents of a child placed in foster care . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. . . . The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

"The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Foster contends he complied with the foster care service plan and did what was required of him. Thus, he argues that he remedied the conditions that led to foster care placement. However, while the record shows that Foster met some of the conditions imposed by the service plan, he failed to meaningfully improve the conditions that resulted in foster care placement. Foster attended parenting classes and received intensive services from Family Preservation Services. However,

Foster failed to implement the skills and proved to be unable to apply what they taught him. Foster failed to follow through with counseling, missing appointments, not cooperating, and discontinuing his medications, such that he was twice terminated from individual counseling. Foster discontinued marital counseling and only attended three sessions. Foster floated from job to job, having nine employers in eighteen months' time. Despite having adequate income, Foster failed to pay utility bills, resulting in the electricity and gas being cut off for extended periods of time.

Foster submitted to psychological evaluations but failed to respond to recommendations for rectifying his circumstances. Further, the evaluator opined that there was no course of therapy that could change Foster such that he could care for his children in a healthy, safe way. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Srvs, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Finally, the evidence established that the children's special needs were being met and they were thriving in foster care. Clear and convincing evidence proved that it was in the best interests of the children to terminate Foster's residual parental rights due to his failure to substantially remedy the conditions that resulted in foster care placement.

Accordingly, for the above stated reasons, the evidence supported the trial court's decision to terminate Foster's residual parental rights to his three boys, pursuant to Code § 16.1-283(C)(2). The judgment of the trial court is affirmed.

Affirmed.